STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss                                    DOCKET NO. CV-26-

**AMBER AHLSEN,**

     Plaintiff,

v.                                                **COMPLAINT**

**BANGKOK THAI ENTERPRISES, INC.**
**d//b/a BODA**

     Defendant.

## NATURE OF ACTION

This is an action for discrimination, retaliation and constructive discharge in violation of Maine and federal law. Plaintiff brings her claims under the Maine Human Rights Act, 5 M.R.S. §4551 et seq., the Maine Whistleblowers' Protection Act, 26 M.R.S. §831 et seq., and analogous federal laws, including Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981.

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff Amber Ahlsen ("Plaintiff" or "Ms. Ahlsen") is a natural person, citizen, and resident of Portland, Cumberland County, State of Maine.

2. Defendant Bangkok Thai Enterprises, Inc. d/b/a Boda (hereinafter "Boda") is a Maine corporation and Thai restaurant with a principal place of business in Portland, Cumberland County, Maine.

3. Venue and jurisdiction are proper in this Court on the grounds that Cumberland County is where Plaintiff lives, where Defendant maintains a principal place of business and where the events giving rise to this Complaint took place.

1

## FACTUAL ALLEGATIONS

4.      Defendant operates Boda, which is a Thai-style restaurant located in Portland, Maine ("Boda").

5.      Ms. Ahlsen is an individual who began employment with Defendant in or around April of 2010.

6.      Boda employs more than ten (10) employees.

7.      Ms. Ahlsen worked as a server, a position she held until she was constructively discharged in July of 2025.

8.      For more than fifteen (15) years, Ms. Ahlsen had performed her job satisfactorily.

9.      In or around early 2025, Ms. Ahlsen and other employees began to complain to the owners/managers of Boda, Danai Sriprasert and Nattasak Wongsaichu ("Dan" and "Bob"), and managers Kage Harrigan and Maximillian Clark ("Max") of various unlawful practices, including wage and hour violations that Boda was committing.

10.     In March of 2025 Ms. Ahlsen's father became very ill and Ms. Ahlsen communicated with Dan and Bob about using paid time off while she visited her father in the hospital.

11.     Bob responded to Ms. Ahlsen that Boda "[w]e did not set up for EPL with DOL since this was not required by law." Defendants did offer or provide employees with the benefit of paid time off or earned leave.

12.     An exemplary list of unlawful practices and/or violations that Boda committed while Ms. Ahlsen was employed and complained of as a server includes, but is not limited to:

> (a)     Paying managers from the service employees' tip pool, 26 M.R.S. § 664(2-A)(B);

(b)     Paying non-service staff, such as hostesses, from the tip pool, 26 M.R.S. §
        664(2-A)(A);

(c)     Having service staff work shifts as Hosts/Hostesses for full minimum wage
        and additionally providing them with $15/hour from the tip pool, 26 M.R.S.
        664(1);

(d)     Changing employees' rate of pay without notice, 26 M.R.S. § 621-A(5);

(e)     Failure to offer or provide appropriate earned paid leave to employees, 26
        M.R.S. § 637;

(f)     Failing to post documented Employment policies and laws, including paid
        family and medical leave policies and laws; 26 M.R.S. §§ 42-B and 850-I;

(g)     Failing to offer or provide paid family and medical leave to employees; 26
        M.R.S. 850-C;

(h)     Failing to maintain payroll records for the required three-years, 26 M.R.S.
        § 665;

(i)     Paying certain employees "under the table", *Id.*;

(j)     Employing and housing undocumented workers;

(k)     Permitting unsafe conditions in the workplace, including the knowing sale
        and service of spoiled food (rice) to the consuming public in order to save
        costs and exposure to natural gas or propane hazards, including a risk of
        explosion;

(l)     Retaliating against employees for their good faith complaints of unlawful
        practices, 26 M.R.S. § 833.

3

13. Defendant maintained a tip pool whereby tips collected from customers were combined to be distributed by Boda to its employees.

14. From the time Ms. Ahlsen began working at Boda until the COVID-19 pandemic into 2021, employees were tipped out daily. When the restaurant reopened to the public in 2021, the employees' portions of the tip pool began to be distributed weekly instead of daily.

15. From 2021 on, the tip pool distributions were made weekly based on the amount of hours each participating employee worked during that week and paid to each by check memorialized in a tip check book register.

16. For as long as Ms. Ahlsen worked at Boda, were paid from the service employee's tip pool.

17. Managers received payments from the tip pool based on the hours they worked, the same as other service employees.

18. Managers also received payments from service charges and tips for takeout.

19. On information and belief, some employees were paid with cash "under the table," both as distributions from the top pool and direct wages.

20. Defendant's "Employment Guide", purportedly effective on July 9, 2016 through to July 25, 2025, makes zero references to paid leave or tip pooling and, though there are sections listed in its' Table of Contents referencing "5. Employee Benefits" and "7. Timekeeping & Payroll" with subparts, these sections are substantively omitted in the content of the document with no further reference to either and no actual policies annotated.

21. On or around January 12, 2025, Jacob Michaud ("Jake"), a co-worker of Ms. Ahlsen, e-mailed owners Dan and Bob, and manager Kage, and specifically notified them that it was unlawful to pay managers from the tip pool.

4

22.     On or around March 17, 2025, Ms. Ahlsen met with owners Dan and Bob, and manager Max Clark, personally to discuss several topics, one of which was the unlawful payment to managers from the service employee's tip pool.

23.     Ms. Ahlsen also complained to owners Dan and Bob, and manager Max Clark, about the lack of paid leave policies, and about mistreatment and retaliation by managers in response to her protected whistle blower activities.

24.     Ms. Ahlsen and others contemporaneously complained to the Maine Department of Labor.

25.     After receiving complaints from its employees, including Ms. Ashlen, Boda continued its unlawful practice of paying managers from the employees' tip pool, only now by wrongfully reclassifying the managers and/or purporting to change their duties.

26.     As a result of her complaints, Ms. Ahlsen faced backlash and retaliation from her managers because Ms. Ahlsen complained about them receiving money from the tip pool maintained for service employees.

27.     On or around April 17, 2025, and at subsequent times, manager Max Clark threatened the complaining employees, including Ms. Ahlsen, that if employees pursue recovery of their back wages it will "ruin this restaurant," that "[Boda] will have to shut down and everyone will lose their jobs except for a handful of people because Boda will only be able to do takeout," "only one to three people will be able to keep their jobs in the front of house if [Boda] were to close and do takeout only" and that the attempt will "get [all other employees] fired" and "all the kitchen staff deported because hardly any of them are legal."

28.     Concurrently, Ms. Ahlsen and other employees filed complaints with the Maine Department of Labor.

5

29.    Behind the host area and next to the kitchen area at Boda, near the computer and together with the schedule, management left out the tip pool check register, whereby employees could look at and record the tip checks given to each on a weekly basis.

30.    The check register resided there the entire time Ms. Ahlsen was employed with Boda.

31.    In spring of 2025, Ms. Ahlsen photographed the tip pool check register.

32.    On or around June 9, 2025, Ms. Ahlsen was given a written reprimand for photographing the tip pool check register whereby Boda stated that "[n]on-management employees are not permitted to access private company financial documents such as this." This despite the fact that no policy in place according to Boda's "Employment Guide" forbade, discouraged, or mentioned such. At or about the same time, Ms. Ahlsen was targeted for a work place investigation, pressured to sign a document without being provided an opportunity to read it and uncomfortably "watched" by Bob during a specific Monday shift, all in an effort to intimidate her.

33.    As of July 8, 2025, the tip pool check register was removed. Boda claims to only possess a photographed register which goes back to January of 2025. All registers which previously existed prior to January of 2025 were destroyed.

34.    The June 9, 2025 reprimand, issued just shortly after she and other employees began to complain about the unlawful tip-pooling practices, was only her second reprimand in fifteen years and the first in almost three years.

35.    The same June 9th written reprimand chastised Ms. Ahlsen for sending "threatening and harassing" text messages to Max including what the reprimand referred to as "false accusation of committing a crime." On information and belief, the false accusation refers to complaints of the

unlawful tip-pooling practices whereby Max Clark, a manager, was being paid from the service employees' tip pool and from takeout orders.

36.    Management refused and failed to address Plaintiff's complaints for a period of over 4 months.

37.    Ms. Ahlsen made good-faith complaints to management regarding the retaliatory treatment and underlying unlawful practices.

38.    Defendant retaliated against Ms. Ahlsen by not adequately investigating and remediating Plaintiff's complaints and by issuing her a written reprimand and disciplining her.

39.    After Ms. Ahlsen complained of the unlawful tip-pooing practices, the paid time issues, and harassment and retaliation by management, management further retaliated against Ms. Ahlsen by suddenly instituting and posting a new policy requiring that all employees make themselves available at least one weekend day per week going forward or risk termination. This new policy was putative and designed to make Ms. Ahlsen quit.

40.    Just days prior, Ms. Ahlsen had informed management that she was no longer able to work weekends at all.

41.    Workplace conditions became so hostile and intolerable that Ms. Ahlsen was forced to resign on July 31, 2025.

42.    On July 31, 2025, Ms. Ahlsen sent a text message to manager Max Clark notifying him that she was having panic attacks before each shift and that coming to work at Boda was causing her great stress. Ms. Ahlsen noted prudently that she needed to take care of her mental health and that that night's shift would be her last.

43.    Ms. Ahlsen's resignation constituted a constructive discharge, as any reasonable employee would have felt compelled to resign under the circumstances.

44. During Ms. Ahlsen's tenure at Boda her pay was changed multiple times without notice or consent.

45. Plaintiff filed a timely charge with the Maine Human Rights Commission (MHRC).

46. On January 30, 2026, the Maine Human Right's Commission issued a Right to Sue letter.

## COUNT I- WHISTLEBLOWER PROTECTION AND RETALIATION

### (Title VII, 42 U.S.C. §2000e-3(a); Maine Human Rights Act, 5 M.R.S. §4551 *et. seq.*; and Maine Whistleblowers' Protection Act, 26 M.R.S. §833)

47. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

48. At all relevant times, Plaintiff, an employee of Defendant Boda, took actions that are protected under the Whistle Blower Protection Act, 26 M.R.S. § 833.

49. Plaintiff engaged in protected activity under federal and state law by opposing and reporting conduct she reasonably believed constituted a violations of law both orally and in writing.

50. Plaintiff made these reports in good faith to management at Boda as well as the Maine Department of Labor and the Maine Human Right's Commission.

51. Plaintiff's complaints were protected under:

   (a) Title VII, 42 U.S.C. §2000e-3(a) (prohibiting retaliation for opposing unlawful employment practices);

   (b) Maine Human Rights Act, 5 M.R.S. §4572(1)(E) (prohibiting retaliation against individuals who oppose discrimination); and

   (c) Maine Whistleblowers' Protection Act, 26 M.R.S. §833(1)(A)-(C) (protecting employees who report conditions that violate law or endanger health and safety).

8

52.     Following her protected complaints, Defendant, acting through management, retaliated against Plaintiff by:

  (a)     threatening her terms, conditions and/or privileges of employment;

  (b)     reprimanding her, in writing, for actions taken which were not against Boda's written policies and were in furtherance of her recovering her lost wages;

  (c)     changing scheduling policies so that she could no longer comply with requirements and reducing the hours she could work and the income she could earn; and

  (d)     creating and maintaining an intolerably hostile work environments.

53.     Defendant intentionally discriminated and retaliated against Plaintiff for her protected whistleblower activity.

54.     Defendant's unlawful actions caused Plaintiff to suffer inconvenience, substantial physical, mental and emotional pain and suffering, loss of enjoyment in life, substantial economic damages, and loss of past and future earning capacity.

55.     Defendant's retaliatory conduct continued for months, ultimately making Plaintiff's working conditions so intolerable that she was forced to resign on July 31, 2025.

56.     Plaintiff's resignation constitutes a constructive discharge, which is treated as an adverse employment action under both federal and Maine law.

57.     Defendant's conduct and inaction were intentional, willful, malicious, and/or done with reckless disregard for Plaintiff's rights.

58.     Defendants knew or should have known that this intentional discrimination and retaliation against Plaintiff would result in her constructive discharge.

59.     By virtue of the foregoing, Defendant is liable to Plaintiff for violation of Maine's Whistleblower Protection Act and retaliation, and constructive discharge, in an amount to be

9

determined together with interest, costs, and attorneys' fees. Plaintiff seeks recovery of all available remedies and all form of damages, including punitive damages.

## COUNT II – PUNITIVE DAMAGES: 5 M.R.S. § 4551, *et. seq.*

60.    Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

61.    Defendants engaged in discriminatory and retaliatory practices against Plaintiff with malice and/or reckless indifference to the rights of Plaintiff to be free from employment discrimination and retaliation for whistleblower activity.

62.    Defendant's wrongful conduct was so outrageous that malice may be implied.

63.    By virtue of the foregoing, Defendant is liable for punitive damages in an amount to be determined at trial.

## COUNT III – WRONGFUL CONSTRUCTIVE DISCHARGE

64.    Plaintiff represents and alleges the foregoing paragraphs as if fully set forth herein.

65.    Defendant made continued employment so hostile, unwelcome, and unbearable for Plaintiff that she had no reasonable alternative except to resign her position of employment.

66.    Any reasonable employee in Plaintiff's position would have likewise resigned their position of employment. Plaintiff's resignation of employment constitutes a constructive discharge.

67.    Plaintiff was damaged by Defendant's conduct.

68.    By virtue of the foregoing, Defendant is liable to Plaintiff in an amount to be considered together with interest, costs, expenses, attorneys' fees, and punitive damages.

10

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

(a) Enter judgment for Plaintiff on all claims;

(b) Award damages for front pay, back pay, emotional distress, special damages, consequential damages, and compensatory damages and punitive damages;

(c) Award attorney's fees, expenses and costs pursuant to 5 M.R.S. §4614; and

(d) Grant such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

DATED at Portland, Maine, this 18th day of March 2026.

> Respectfully Submitted,
> Amber Ahlsen,
> By counsel,
>
> Jeffrey Bennett, Esq. Bar #7223
> Allison McGonagle, Esq. Bar #10763
> Legal-Ease, LLC P.A.
> Two City Center, 4th Floor
> Portland, Maine 04101
> T: (207) 805-0055
> service@legal-ease.com

11